ANNA B. MILNE, DEFENDANT, v. ATLANTIC MACHINE TOOL WORKS, INC., PROSECUTOR.

Argued May 4, 1948—Decided September 9, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Henry M. Grosman* and *Isidor Kalisch.*

For the defendant, *David Roskein* and *John A. Laird.*

PER CURIAM.

On appeal from a judgment of the Essex County Court of Common Pleas, entered on order of Judge Hartshorne who filed the following opinion:

"* * * In this Workmen's Compensation appeal the workman, Edward Milne, fifty-three years of age, was working for respondent, Atlantic Machine Tool Works, Inc., at a bench on November 9th, 1943. Previous thereto he had been in apparently good health. He was trying to loosen a heavy vise when the handle sprung loose and struck him on the outer part of the left thigh. One of his fellow employees, who saw the accident, saw him turn white from pain, and told him to take it easy. He left work early, and his wife testifies he was limping when he got home. Both his wife and his son

observed a swelling and redness where he was hit, as above. Nevertheless, since the blow then appeared to be but minor, he continued to work, though limping. This continued for about a week, but since his leg did not improve, he then saw a doctor, who found tenderness in the area complained of, the external marks of the blow having subsided.

"Since there were no signs of a blow, but only an ache and limp toward the hip joint, the doctor at first diagnosed petitioner's difficulty as rheumatic. However, there still being no improvement, Milne returned to Dr. Dukes a week or so later. The doctor then apparently questioned petitioner further, and was told of the above blow with the vise handle, which, probably because of its apparently minor nature, petitioner had not spoken of at his first visit to the doctor. Thereafter, Milne's leg became progressively worse, till he was admitted to the hospital in December, an operation performed at the place where the blow had occurred, the bone scraped due to the finding of an osteomyelitis, a specimen of the tissue taken, and a diagnosis made of epidermoid carcinoma, a cancer ordinarily arising, not in the bone, but in the soft tissue, particularly the lungs.

"After the operation, decedent's condition grew progressively worse, the carcinoma continuing to spread or metastasize, until Milne died February 15th, 1944, the cause of death being given as 'squamous cell carcinoma of femur (carcinoma of bone).' Not only the attending and operating physician, Dr. Dukes, but the medical expert for petitioner, Dr. Milton Friedman, at the time in charge of the Radiation Therapy Section of the Walter Reed General Hospital in Washington, join in the conclusion that this apparently well workman, who received this apparently minor blow early in November, at that time had an underlying, though quiescent, cancerous condition, and that this cancerous condition was stirred into activity and aggravated by such blow, which hastened, and in part caused, the death of the workman, the present petitioner's husband.

"The respondent company contends that this conclusion is erroneous, claiming, first, there was no such blow, and, second, if there was, it did not aggravate petitioner's cancerous con-

dition and hasten his death. But in support of its first contention, that there was no such blow, contrary to the testimony of the decedent's fellow workman, his wife, his son, and the attending physician, all that respondent offers is the testimony of its office manager, who says no accident to Milne was reported to him, and the fact that the hospital record shows no history of an accident, and that the treating physician was not informed by Milne of the blow until his second visit.

"All this, however, far from being inconsistent with the circumstances, is quite consistent therewith. For, in the eyes of this layman, the mere blow from the vise handle, whose external effects had disappeared before he first visited the doctor, certainly seemed a trivial matter, and not an 'accident' in the ordinary meaning of the term, to the layman. Indeed, had not the man had this underlying cancerous condition, clearly, after a day or so, the effects of the blow would have completely disappeared. It was his underlying cancerous condition which made the difference. But since at the time neither the man nor the attending and operating physician knew of this underlying cancerous condition, neither of them attributed any importance whatever to this trivial blow. Similarly, at the hospital, it was not this trivial blow which appeared the serious, predisposing condition, but the cancer itself. For this reason, the hospital records are filled with allusions to the cancer, but no allusion to this apparently slight cause of aggravation. For exactly the same reason, the attending doctor may not have told the insurance adjuster of this apparently minor incident. Though the recollection of this adjuster is doubtless inaccurate, as indicated by his testimony that Dr. Dukes first saw the workman at the hospital, this in the face of the doctor's detailed testimony as to his previous conferences on several occasions with the workman at his office, giving the dates of the examinations and diagnoses there made. To conclude that all of petitioner's witnesses, as above, are perjurers, would seem quite unfair on the above slim basis.

"As to the medical fact that the blow did hasten the metastasis of the underlying cancerous condition, not only does

Dr. Friedman ably set forth the medical basis therefor in his testimony (record, pages 74-77), but respondent's medical expert apparently admits such theory to be tenable, though he differs as to the conclusion that it did occur in fact (record, page 133). But this expert does say that an 'acceleration' or aggravation could occur through a blow to a cancerous condition, either where there are 'torn blood vessels or else there must be a breakthrough of the tumor through the periosteum.' And immediately after this testimony, respondent's expert finds there was 'evidence of inflammation of the periosteum of the bone * * * due to elevation of the periosteum by a tumor tissue—at the junction of the middle and upper thirds of the shaft of the femur' (record, page 138). This was exactly where the blow in question occurred, when the workman had his pain, where the tumor was found, and may well have indicated the existence of the very conditions this expert alluded to above.

"Thus the medical testimony would seem clearly to support the common-sense conclusion that where a man, suffering from an entirely quiescent cancerous condition, but apparently in good health, suffers a slight accidental blow, and where immediately and progressively thereafter, at the spot of such blow, pain, osteomyelitis and cancerous cells are found, with a rapidly deteriorating general physical condition, resulting in his death, the blow is not utterly immaterial, but has in fact lighted up and aggravated the metastasis of his cancerous condition, and thereby in part hastened and caused his death.

"The action of the Bureau will therefore be reversed, and a determination may be entered accordingly."

The judgment will be affirmed, for the reasons expressed in the opinion of Judge Hartshorne.